

Jonathan V. O'Steen, Esq. – State Bar #024043
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona  85013-3424
(602) 252-8888
(602) 274-1209 FAX
josteen@vanosteen.com

Richard A. Dillenburg, Esq. – State Bar #013813
**RICHARD A. DILLENBURG, P.C.**
2173 E. Warner Rd., Suite 101
Tempe, Arizona  85284-3503
(480) 668-1924
(480) 831-7438 FAX
rich@dillenburglaw.com
**Attorneys for Plaintiffs**

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Wikler and Randi Wikler, husband and wife, | NO. CV-17-02664-PHX-GMS |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, RE: BAD FAITH AND MEDICAL EXPENSES** |
| v. | |
| Privilege Underwriters Reciprocal Exchange, an unincorporated association, d/b/a/ Pure Insurance; Privilege Underwriters, Inc., a Delaware corporation; | (Assigned to the Honorable G. Murray Snow) |
| Defendants. | |

Plaintiffs, by and through undersigned counsel, pursuant to FED.R.CIV.P. 56, hereby move for summary judgment on the separate issues of bad faith and medical expenses of the hospitals.  This *Motion* is supported by the accompanying



*Memorandum of Points and Authorities* and *Plaintiffs' Statement of Facts in Support of Motion for Partial Summary Judgment.*

## I. Factual Background

On April 14, 2014, Plaintiffs were involved in an automobile collision with an underinsured motorist. While both Louis Wikler and Randi Wikler were injured, Randi Wikler received the most serious injuries including cortical avulsion fractures along the dorsum of the navicular and neck of the talus in her left foot. **PSOF 1**. She also received tendon damage as well as an aggravation of her underlying congenital condition in the foot. **PSOF 2–3**. After conservative treatment failed, Randi Wikler consulted with two board-certified orthopedic surgeons who specialize in foot and ankle procedures; both recommended surgery. **PSOF 4**. Randi Wikler opted to have surgery performed by Stanley Graves, M.D., who performed surgery on June 1, 2016. **PSOF 5**.

Randi Wikler had been employed as a part-time lab technician with the Mayo Clinic since 2002. **PSOF 6**. She earned $31.52/hour and worked 20 hours per week. **PSOF 7**. As a consequence of her injuries and inability to stand for any meaningful length of time on her foot, she missed work from April 14, 2014 to August 5, 2014 and March 3, 2015 to August 4, 2015. She was forced to take a leave of absence from June 21, 2016 until October 25, 2016. She took a final leave on January 2, 2017 and lost her position with Mayo Clinic. **PSOF 8**

The driver of the vehicle that struck Plaintiffs' vehicle ran a red light and is 100% at fault for the collision. The driver of the vehicle that struck Plaintiffs' vehicle was insured by USAA with state minimum liability limits of $15,000.00/30,000.00.



## II. PURE Acted in Bad Faith

### A. Insuring Agreement

At the time of the collision, Plaintiffs were insured by PURE with optional coverage for damages caused by underinsured motorists. **PSOF 9**. The policy promises:

> We will pay compensatory damages which an "insured" is **legally entitled to recover from the owner or operator of an "underinsured motor vehicle"** because of "bodily injury": 1. Sustained by an "insured"; and 2. Caused by an accident.

**PSOF 9.**

### B. The Claim

On October 2, 2014, USAA offered Randi and Louis Wikler the respective $15,000.00 policy limits. Plaintiffs notified PURE on October 7, 2014 that they were offered the at-fault driver's policy limits and would be looking to their underinsured coverage with PURE for further compensation. **PSOF 10**.

The PURE adjuster assigned to handle the investigation, evaluation, and payment of underinsured motorist benefits prepared an undated written evaluation of Randi Wikler's damages during the month of April 2017. **PSOF 11**. The evaluation documented that Randi Wikler had lost wages, past and future, in the amount of $360,588.08 due to her injuries suffered in the collision. **PSOF 12**. The evaluation documented medical expenses in the amount of $399,056.00 due to her injuries suffered in the collision. **PSOF 13**. The adjuster noted in her evaluation that medical expenses were owed under Arizona law: "In AZ, must include the meds which total 399K." **PSOF 14**.



While the number of $399,056.00 was in error as the past medical specials are currently $132,816.08 and future medical expenses are projected at $98,506.00–$99,831.00, it is undisputed evidence of the adjuster's state of mind evidencing she was aware that there were substantial medical bills incurred and that in Arizona medical bills were owed. **PSOF 15**. Yet, as discussed below, PURE deliberately left them out of the final settlement evaluation and offer, and this constitutes bad faith.

The adjuster had previously advised the Wiklers that lost wages were compensable. **PSOF 16**. The adjuster testified that she knew from the medical records that Randi Wikler had lost wages over certain periods of time and also knew Randi Wikler had lost her job. **PSOF 17**.

The adjuster came up with a total value on Randi Wikler's claim of $92,000.00. In adding up the adjuster's various categories of damages, the $92,000 did not include anything for medical bills or lost wages. **PSOF 18**.

Under Arizona law, Randi Wikler is entitled to her reasonable medical expenses caused by the driver of the underinsured vehicle. **PSOF 19**. She also is entitled to her lost wages (past and future). **PSOF 20**.

Following her evaluation, the adjuster took an offset of the $15,000.00 already paid Randi Wikler by the underinsured driver's insurer USAA. The adjuster then made the Wiklers a **combined** offer of $77,500.00 to settle their underinsured motorist claims and included a release releasing PURE of any further liability should the Wiklers accept. **PSOF 21**. That offer did not contain ANY amounts for Randi Wikler's medical expenses or lost wages. Nor did it include any consideration whatsoever for future damages, such as medical expenses for an anticipated surgery



or future pain, suffering, disability, anxiety, loss of enjoyment of life or other damages. **PSOF 22**. Lastly, the $77,500 contained not one penny for Louis' claim, which the adjuster previously evaluated at up to $30,000.00. **PSOF 23**.

### C. Arizona Law Dictates a Finding of Bad Faith as a Matter of Law.

In <u>Noble v. Nat. Life Ins. Co.</u>, 128 Ariz. 188, 624 P.2d 866 (Ariz. 1981), the Arizona Supreme Court held the tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." <u>Id.</u> at 190, 624 P.2d at 868. It held that bad faith is established when a plaintiff shows: "the **absence of a reasonable basis for denying benefits of the policy** and the **defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim**." <u>Id.</u> (emphasis added); see also <u>Farr v. Transamerica Occidental Life Ins. Co.</u>, 145 Ariz. 1, 5, 699 P.2d 376, 380 (Ariz.App. Div. 1 1984) (tort of bad faith "is established if the plaintiff demonstrates that the defendant had knowledge of or recklessly disregarded the lack of a reasonable basis for denying the claim").

The Arizona Supreme Court in <u>Zilisch v. State Farm Mut. Auto. Ins. Co.</u>, 196 Ariz. 234, 238, 995 P.2d 276, 280 (Ariz. 2000), set forth some of the obligations of an insurer, the breach of which constitute bad faith, as follows:

> The carrier has **an obligation** to immediately conduct an adequate investigation, **act reasonably in evaluating the claim**, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy.

<u>Id.</u> at 237–38, 995 P.2d at 279–80 (emphasis added).



In Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127 (Ariz. 1982), *cert. denied*, 459 U.S. 1070 (1982), the Arizona Supreme Court held, "the inquiry into whether an insurer has acted in bad faith towards its insured is a question of reasonableness under the circumstances of the case. … Whether the action amounts to bad faith depends upon **whether the insurer failed to honor a claim without a reasonable basis for doing so**." Id. at 538, 647 P.2d at 1136 (emphasis added).

In the Wikler claim, PURE had no reasonable basis to exclude medical expense benefits or lost wage benefits from Randi Wikler's evaluation. PURE was aware that these were damages that Randi Wikler was legally entitled to recover under Arizona law and thus were owed as benefits under the UIM provision in the policy. At a minimum, PURE recklessly disregarded the lack of a reasonable basis for denying those benefits to which Randi Wikler was legally entitled to under Arizona law and the policy.

**III. Medical Expenses**

As part of her care following this collision, Randi Wikler has received treatment at Mayo Clinic Hospital and Greenbaum Specialty Surgical Hospital. Randi Wikler requires ongoing medical treatment as a result of injuries sustained in the crash. **PSOF 24**. Randi incurred past medical expenses of $37,578.35 at Mayo Clinic Hospital and $45,461.43 at Greenbaum Specialty Surgical Hospital for care related to the collision. **PSOF 25**. Stanley Graves, M.D., a board-certified orthopedic surgeon, recommends a future surgery to consist of a triple arthrodedis. **PSOF 26**. Dr. Graves utilizes Greenbaum Specialty Surgical Hospital and the facility fee for the



future surgery is $88,000.00, as reflected in the report of Dirk Leverant, M.D., J.D., C.L.C.P. **PSOF 27**.

### A. The Arizona Legislature enacted A.R.S. § 36-436 to allow the Arizona Department of Health Services to enact procedures to set reasonable rates for hospital services.

The Arizona legislature established procedures for the setting of rates for hospitals. See A.R.S. § 36-436. Mayo Clinic Hospital and Greenbaum Specialty Surgical Hospital both are required to comply, and do in fact comply, with the procedures set forth in A.R.S. § 36-436. **PSOF 28**.

In Banner Health v. Medical Savings Ins. Co., 216 Ariz. 146, 163 P.3d 1096 (Ariz.App. Div. 1 2007), the Arizona Court of Appeals held that medical charges filed with the Arizona Department of Health Services reflect the reasonable charges of the treatment.

Banner Health sued Medical Savings Insurance Company ("MSIC") and several of its members for breach of contract for failure to pay the billed charges. Id. at 149, 163 P.3d at 1099. MSIC and the patients claimed that the charges were unreasonable and employed its own methodology to calculate what they considered "reasonable" charges for medical care provided at the hospital. Id. This methodology incorporated evidence that the hospital accepted lesser amounts from health insurance companies and government agencies as "payment in full." Id.

The Arizona Court of Appeals rejected this approach and repudiated the notion that agreements with healthcare insurers or government agencies to accept lower, contracted amounts impacts the reasonableness of charges for patients who do not fall under those contracts:

O'STEEN & HARRISON
ATTORNEYS AT LAW

> Although the rates and charges for a particular service are the same for every patient, hospitals are free to accept reduced payments in satisfaction of the full billed rates. This frequently occurs, for example, as a result of government programs and contracts with health insurers. **The amounts accepted by a hospital in satisfaction of its billed charges will vary, but the billed rates and charges for specific services do not. Arizona law does not permit a hospital to reduce its filed rates and charges—and therefore its billed rates and charges—without making further filings with the DHS.**

Id. at 150, 163 P.3d at 1100 (emphasis added).

The Court emphasized this point when it noted:

> There is nothing illegal or unauthorized … about hospitals contracting with insurers and government entities to accept reduced payments in satisfaction of their published rates, in return for an anticipated volume of business and prompt payments. Nor does the fact that hospitals routinely accept reduced payments on behalf of many hospitals mean that the published and billed rates are unreasonable.

Id. at 151–52, 163 P.3d at 1101–02.

The Court rejected MSIC's arguments that reimbursement rates, as opposed to the charged billing rates, were reasonable and cited the legislative process for setting and filing rates:

> [MSIC's] arguments fail to take into account the public filing of the rates and Banner's compliance with the legislatively-created process for setting and filing the rates and charges. Hospitals are required to follow specific guidelines in setting their rates; and then the rates are filed with DHS, reviewed by the Director, disclosed publicly, and available upon request. MSIC and the Patients have not asserted that these statutes and regulations are invalid, that Banner failed to follow the specific guidelines and procedures, that the actual billed rates were not in accordance with the filed rates, or that the services and supplies for which the patients were billed were not provided as described. Because Banner followed the statutory and regulatory procedures and Banner's rates are filed and available to the public, we conclude



        as a matter of law that there is no violation of the Patients' reasonable expectations.

Id. at 153, 163 P.3d at 1103.

    The Court held that the reasonable rates for medical services are found in the rate filings with the Arizona Department of Health Services. Id. at 151–52, 163 P.3d at 1101–02 ("The price terms are supplied by the hospitals' filed rates and charges."). As a result, summary judgment was appropriate for Banner Health and MSIC and the patients could not litigate the reasonableness of the charges. Id. at 152, 163 P.3d at 1102.

    Mayo Clinic Hospital and Greenbaum Specialty Surgical Center were required to comply with the statutory procedures implemented by the Arizona Department of Health Services for the setting of their rates. The charges of Mayo Clinic Hospital and Greenbaum Specialty Surgical Center correspond to the rates filed with the Arizona Department of Health Services and approved by its Director.

    The expert retained by Defendants to address medical expenses had little knowledge of the process adopted by the Arizona Legislature and overseen by the Director of the Arizona Department of Health Services to establish reasonable hospital charges.

| | | |
|---|---|---|
| | O'STEEN | Have you ever reviewed A.R.S. § 36-436, which sets forth the statutory process for Arizona hospitals to set their rates? |
| | MICHALSKI | No, I have not. |
| | O'STEEN | Are you aware that the Arizona Department of Health Services is required to establish reasonable guidelines for review of rates and charges for hospitals? |
| | RONAN | Form. |



MICHALSKI  I'm not familiar with that, no.

**PSOF 29**.

Defendants have not claimed that Mayo Clinic Hospital or Greenbaum Specialty Surgical Hospital failed to follow the legislatively-created process for setting and filing rates and charges.  **PSOF 30**.  The defense has not disclosed evidence that the Director of the Arizona Department of Health Services failed to review the charges, publicly disclose the rates or make the filings available upon request.  Defendants have not alleged that the billed charges were not in accordance with the filed rates.  There is not a scintilla of evidence to suggest that the charges for these providers are anything but the reasonable charges filed with the Arizona Department of Health Services and approved by its Director.

### IV. Conclusion

Based upon the foregoing, Plaintiffs request the Court find PURE breached its duty of good faith and fair dealing as a matter of law.  Plaintiffs further request that that the Court find that they are entitled to partial summary judgment on the issue of the medical charges of Mayo Clinic and HonorHealth Greenbaum Surgery Center.  Plaintiff Randi Wikler requests an order that the past medical charges of $37,578.35 for Mayo Clinic and $45,461.43 for HonorHealth Greenbaum Surgery Center represent the reasonable expenses of the medical care described in the records.  Plaintiff further requests an order that projected future medical expenses of HonorHealth Greenbaum Surgery Center in the amount of $88,000.00 represents the reasonable expenses of the facility fee for the future surgery.



RESPECTFULLY SUBMITTED this 27th day of September 2018.

**O'STEEN & HARRISON, PLC**

_____
Jonathan V. O'Steen
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424

**RICHARD A. DILLENBURG, P.C.**
Richard A. Dillenburg

Attorneys for Plaintiffs



**CERTIFICATE OF SERVICE**

I certify that on the 27th day of September 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert Tyson, Esq.
Lynn M. Allen, Esq.
K. Michelle Ronan, Esq.
Tyson & Mendes, LLP
706 E. Bell Rd., Suite 129
Phoenix, AZ  85022
rtyson@tysonmendes.com
lallen@tysonmendes.com
mronan@tysonmendes.com
Attorneys for Defendants

Richard A. Dillenburg, Esq.
Richard A. Dillenburg, P.C.
2173 E. Warner Rd., Suite 101
Tempe, AZ  85284-3503
rich@dillenburglaw.com
Attorneys for Plaintiff

/s/ Jonathan V. O'Steen

c:\sync\clients\wikler\pleadings\msj\msj.doc